26333. SOUTHERN GROCERY STORES INC. *v.* BRAUN.

Decided December 4, 1937.    Rehearing denied December 15, 1937.

*Harold Hirsch, Marion Smith, M. E. Kilpatrick, E. D. Smith Jr.,* for plaintiff in error.

Stephens, P. J. 1. On the trial of a suit to recover for personal injuries alleged to have been received by the plaintiff from slipping and falling on the floor in the defendant's store where the plaintiff had gone for the purpose of making purchases, caused by the alleged negligence of the defendant through its servants and agents in allowing the floor to become slick and

unsafe for the plaintiff to walk upon, by virtue of the employees of the defendant having "spread, coated, brushed, placed, or mopped onto said floor a slick substance or oil, and in failing to notify the plaintiff or to give the plaintiff warning of the slick and unsafe condition of the floor, where it appeared from the evidence in the testimony of the plaintiff that there was a black stuff which was slick and oily on the floor which caused her to slip and fall, and where it further appeared from the evidence that there were in the store at the time, the agents and servants of the defendant who were employed to work in the store for the defendant, and that one of such agents or employees, among whose duties it was to assist in keeping the store clean, approached the plaintiff and asked her if he could wait on her, and walked "just a little ahead of her," approximately four or five feet, and while so doing he was caused to look around and saw the plaintiff getting up from the floor, the inference is authorized that the defendant, through its servant and agent, whose duty it was to look after the floor and keep it clean, and who had preceded the plaintiff along the floor where the plaintiff slipped and fell, was negligent in not observing and knowing the condition of the floor as described by the plaintiff, and in not notifying or warning the plaintiff of such condition, and therefore failed to exercise ordinary care to keep the premises reasonably safe for the plaintiff who was lawfully therein, and that such negligence of the defendant was the proximate cause of the plaintiff's injuries. The evidence authorized the verdict for the plaintiff.

■ The only special ground of the motion for new trial being but an elaboration of the general grounds, the court did not err in overruling the motion.

Judgment affirmed. Sutton, J., concurs.

Felton, J., dissenting. The petition alleged that while the plaintiff was in a store belonging to the defendant for the purpose of making a purchase she fell on the floor, and "while lying on the said floor she found that the floor . . had been thickly covered with a coat of oil or some slick substance [which] caused your petitioner to fall on to the hard floor of said store herein referred to, and caused petitioner . . to suffer . . injuries; that defendant was negligent in that defendant . . spread, coated, brushed, placed, or mopped on to said floor a slick sub-

stance or oil in said store where petitioner was making her purchases, . . and that the placing, brushing, or in any way spreading on this oil or slippery substance on this floor herein referred to caused the petitioner to fall . . ; that petitioner alleges that defendant was negligent in that defendant . . failed to notify this petitioner that the floors of the said store where she was making her purchases were slick and unsafe for this petitioner to walk upon . . ; that the defendant failed to give petitioner any warning of any kind or nature that the floor of said store was slippery and that petitioner would fall if she stepped or walked on it."

Mrs. Braun testified, in substance: "I started out from the meat department, and my feet just slipped out from under me. I did not have occasion to observe anything wrong with the floor until I was trying to get up. I looked at my hand, and it was all black and greasy, and it was all on my clothes . . oil . . I don't know what it was, but it was something that made me slip. I don't know what they put on the floors, but it was a black substance. I got this stuff on my coat, and had to have it cleaned. Before I left the store I turned around and I told them, 'You should not have your floors so slick.' I did not notice anything about the floor when I first walked in the store. I was shopping. I don't guess I was in the store more than ten minutes when I fell. I just got my meat and bought some potatoes up at the front. I had started away from the meat counter when I fell. As to what called my attention to the condition of the floor then, I put my hand down to raise up, and there was black stuff all on my hand. I would not be able to tell what this substance was, only it was something slick or oily. As to whether this slick substance was only on the part of the floor where I was, I don't know. I was not all over the store; I was just on that one side. Where I slipped is the only thing I noticed. I don't know who put that oil or stuff on the floor. As to whether this was there when I came in the store or not, there were only two clerks in there, and I did not see anybody doing anything to the floor. I have no judgment about how long this substance had been on the floor. I just know I slipped on it, and the floor was slick. Nobody gave me any warning, and there was no notice that this floor was slick and to be careful. I did

not see any signs like that. I did not observe this substance on the floor until I got it on my hands and clothes."

John W. Pierce, one of the defendant's clerks, testified as follows: "I had been out there at that store at that time about nine months. It was a part of my duty to assist in keeping the store clean and taking care of it. The floor was swept as often as there was any trash on it, and if anything else gets on it, it is swept and cleaned up immediately. Quite often the store is swept ten and fifteen times a day. I noticed the condition of the floor at the point where Mrs. Braun fell, and it was clean. The floor itself, that is the actual boards in the floor, were in good condition. It is a hardwood board floor. There are no defective parts or defective boards in it. If I said the floor was not smooth, I meant that it was not slick. It was smooth but not slick. I don't know when was the last time prior to that date we had put wax on the floor. I think it was about two weeks before; I am not sure. We mopped it on there. Yes, we mopped just as hard as we could, to preserve the wood. The last time I remember putting oil on the floor was some three weeks prior to the date that Mrs. Braun fell. I was the one who put the stuff on there. The stuff we put on the floor was in liquid form, and we had it in a bucket, and we put it on with mops. They do that in every store. As to how I know to do it . . whenever the floor needs it, the manager tells you. I don't know what is in the stuff. As to whether the stuff becomes hardened, it becomes absorbed in the wood. I have worked in hundreds of stores and greased hundreds of floors. As to why we sweep the floors ten or fifteen times a day, . . it is to get up the trash, such as matches and cigarette butts. We put this trash in a garbage can. As to why I know this floor was not defective, we have a carpenter; and if anything is wrong, they send a carpenter out right away to fix it. We applied this substance to the floor about once a month, on Saturday night, after the store is closed. We do not admit any patrons into the store while it is being done, and no customers enter the store on Sunday. The substance that we apply on this floor is bought from one of the oil companies; I don't know which one. I believe that it is the Standard Oil Company. It is a special preparation that is made to treat and preserve floors. It is applied to the floors to pre-

serve them and keep down the dust, and it has mild insecticide qualities. As to why we would not let anybody on that floor after we put this grease or wax on it, you would get oil on your shoes and ruin them."

C. B. Christian testified as follows: "I have been manager of that store sixteen years, and was manager on the day in question, and am still manager. A few days later, Mr. Barnett called me and asked me about an accident, and he said a lady had preferred charges, said she fell in the store may be three or four days before. He said, 'Make a notation as to the last time you oiled the floor,' and I made the notation at the instance of Mr. Barnett, who is the personnel man out there. I remember when the floor was oiled prior to the accident. This happened on, I believe, the 19th, and the floor was oiled on the second. That is about seventeen days. We generally oil the floor on Saturday night after we close the store. I have been using this floor preparation ever since I have been with the company. It is just a thin, light floor oil of some light color. The purpose of the preparation is to keep down a whole lot of dust, and it helps the appearance of the store when it gets dry. The main reason we use it is to prevent dust from flying. After it has been on the floor for twelve hours, you can not see any of the oil on top of the floor. It changes the color of the floor for a while. As to why we place this oil on Saturday night, if you would walk on it just as soon as it is put down, it probably would be slick; and ladies coming in there with white shoes and one thing and another, it would soil the shoes. Our applying it on Saturday night is so that it will have time to set over the week-end before anybody uses the store. We put it on with a mop, and smooth it out; and when we come in Monday morning we come in and look to be sure there is no slick surface in the place. I am the one who directs how the floor shall be kept clean during the day, and I assist in keeping it clean. I always train everybody that works there to keep the floor clean, and I am constantly on the outlook to see that the floor is clean and in good condition. It is a special oil that the Standard Oil Company puts out. The oil is not black or sticky. If there was a black sticky substance on the floor, it could not possibly, in my opinion, have come from this floor oil that we applied to the floor. No, I have not found

any black sticky substance out there. As to whether I heard anybody say anything about black sticky substance, . . yes, I heard the lady say something about it. As to how often we apply this oil to the floor, it is about every four or five weeks, no special time. The oil is furnished by the Standard Oil Company."

D. P. Murphey testified as follows: "I am employed by the Standard Oil Company of Kentucky, as assistant district manager. I handle lubricating oils, specialties of all kinds, and greases of all kinds. I take care of the sale and distribution and handling of oils which are sold to keep floors in condition. I am familiar with the character of this floor oil and what it is applied for. The floor oil is particularly prepared for the purpose of being used on floors. It is refined from crude oil. The first thing that comes off is known as rickoline; next is known as gasoline; and following that, by distillation, we get what is known as kerosene. Then 'the next thing that comes off by distillation is known as paraffine or floor oil. This floor oil has a little more distosity than kerosene, and you can term this floor oil as a lubricating oil, but there is very little lubricating to it. The purpose of putting this oil on the floor is to allay dust. It is specifically designed with the fact in mind that the floor or floors on which it will be applied will be used to walk on. I would say that our sales of that oil last year was in the neighborhood of 100,000 barrels from the Atlanta branch. It is the type of oil that is customarily used by all persons who keep retail stores and have wooden floors in the store. I consider it a proper and high grade product to be used on the floor, and I consider it a proper method of treating a floor. I went into Rogers' store at 533 Peachtree Street to see just where this accident occurred and the manager of the store showed me the location. I did not find any slickness on the floor nor any irregularities of the boards in the floor. The portion of the floor which is walked on absorbs this oil very much quicker than it would where the floor is not being used, because a certain amount of the oil would naturally work into wood, you might say, by constant walking over it. I would recommend that the floor in the store in question be oiled once a week. They have never asked me for a recommendation at that particular place. If that floor had been oiled on the first of January, and three weeks later a person took a white cloth and

rubbed it on the floor, I imagine the cloth would have both oil and dirt on it. We sell the oil I have been talking about to the Southern Grocery Stores. We don't sell them any other type of oil to treat their floors with. There would be no excess of oil on the floor if the store was heated at 72 degrees from the time of the oiling to the first of February."

The charge against the defendant is that it rendered its floor slick by voluntarily applying some kind of oily substance to it, and that it failed to notify the plaintiff that it was slick. If the plaintiff recovers at all, it must be on the specifications of negligence contained in the petition. Whether some other substance got on the floor otherwise than by voluntary application, and was there for a sufficient length of time for a failure to observe it and remove it or warn the plaintiff to amount to negligence, is not a question involved in the case. The evidence of the defendant showed that if the plaintiff's accident was due to the oiling of the floor, it was not liable because it used a product ordinarily used by like stores for like purposes, manufactured by a reputable manufacturer. This is not negligence. Parker v. Great Atlantic & Pacific Tea Co., 201 N. C. 691 (161 S. E. 209) ; Coyne v. Mutual Grocery Co., 116 N. J. L. 36 (181 Atl. 314) ; Mona v. Erion, 223 App. Div. 526 (228 N. Y. S. 533). There was no evidence that the oil was improperly applied to the floor; and inasmuch as the rule of res ipsa loquitur does not apply in such a case, the plaintiff can not recover without specific proof of negligence, and the mere facts that the floor was oiled and that the plaintiff fell are not sufficient.